IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH GRANT McHENRY,

    Plaintiff,                         No. CIV S-03-1573 DFL DAD P

    vs.

DR. VAN C. VONG, et al.,

    Defendants.                   <u>FINDINGS AND RECOMMENDATIONS</u>

          Plaintiff is a state prisoner proceeding pro se and in forma pauperis with this civil rights action. Defendant Brown has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the undersigned recommends that defendant's motion be granted and this action be dismissed.

                        PROCEDURAL HISTORY OF THE CASE

          Plaintiff is currently confined at Mule Creek State Prison and was confined there when he filed this action. His claims arise from an incident that occurred in 2001 when plaintiff was confined at California State Prison-Sacramento.

          In his original complaint, plaintiff alleged that three named defendants violated his Eighth Amendment rights through staff misconduct, deliberate indifference, and denial of medical care. (Compl. at 1-2.) The undersigned determined that the complaint stated cognizable

1

1  claims against Dr. Van C. Vong and Brian Brown but not against Cheryl K. Pliler.[1]  Plaintiff's
2  claims against defendant Pliler were dismissed on September 26, 2003.  The United States
3  Marshal served plaintiff's complaint on defendant Brown but was unable to effect service on
4  defendant Vong.  Plaintiff's claims against defendant Vong were dismissed on June 10, 2004.
5  	Plaintiff filed an amended complaint on December 29, 2003.  On June 25, 2004,
6  defendant Brown was directed to file an answer to the amended complaint.  Defendant Brown's
7  answer was filed on July 6, 2004, and a discovery order was filed on July 12, 2004.  A scheduling
8  order was issued on August 24, 2005.
9  	Defendant Brown filed his motion for summary judgment on March 24, 2006.
10 Due to delays caused by plaintiff's failure to oppose the motion, the court vacated the dates set
11 for pretrial conference and jury trial.  (See Order filed July 24, 2006, at 4.)

PLAINTIFF'S CLAIMS

13 	In his amended complaint, plaintiff alleges as follows with regard to defendant
14 Brown: On January 16, 2001, plaintiff was working in the kitchen as a cook when two inmates
15 known as Flaco and Mugsy assaulted him in the work area, using as weapons a gallon can of
16 pudding and an industrial-sized can opener; plaintiff suffered a broken right hand, a fractured left
17 wrist, a broken nose, and injuries to both eyes; the inmate workers were under the supervision of
18 defendant Brown, who was sitting in another room when the assault began; when defendant
19 Brown heard the noise from the attack, he entered the work area, sounded his alarm, and sprayed
20 the attackers with pepper spray; plaintiff was transported to the clinic and was taken by
21 ambulance to an outside hospital.  Plaintiff alleges that defendant Brown failed to supervise the
22 inmates in accordance with the requirements of his job and allowed the attack to occur, causing
23 plaintiff to suffer life-threatening injuries in violation of plaintiff's rights under the Eighth

---

[1] Plaintiff previously brought a civil rights action against defendants Brown and Vong on the same claims.  See case No. CIV S-02-0141 WBS DAD P.  On June 17, 2003, the court granted defendant Brown's motion to dismiss the action due to plaintiff's failure to exhaust available administrative remedies before bringing suit.

2

Amendment. Plaintiff alleges that defendant Brown provided the inmates with a 21.7 pound can opener that was not secured to a table despite the fact that other can openers in the work area were chained or welded down to prevent their use as weapons. Plaintiff asserts that defendant Brown failed to protect him from harm. Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages.

## STANDARDS APPLICABLE TO A MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. Summary judgment should be granted "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the

existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits and/or admissible discovery material in support of the contention that a dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The party opposing summary judgment must show that any fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987); Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In trying to establish the existence of a factual dispute, the party opposing summary judgment need not establish a material issue of fact conclusively in his or her favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

The evidence of the party opposing summary judgment is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the party opposing summary judgment.  See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587.  Inferences will not be drawn out of the air, however; it is the opposing party's obligation to produce a factual predicate from which an inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

1   By order filed October 1, 2003, the court advised plaintiff of the requirements for
2   opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See
3   Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d
4   409 (9th Cir. 1988).

THE PARTIES' ARGUMENTS AND EVIDENCE

I.  Defendant Brown's Motion

Defendant concedes that he was responsible for supervising the area where plaintiff was assaulted on January 16, 2001, but asserts that neither he nor plaintiff had any reason to believe plaintiff was in any danger.  Defendant contends that the court should grant summary judgment because plaintiff has offered no evidence that defendant was deliberately indifferent to a substantial risk of serious harm to plaintiff.  Defendant argues that he is also entitled to qualified immunity because his actions did not violate any constitutional right.

Defendant's motion is supported by defendant's declaration dated March 20, 2006, plaintiff's testimony at his deposition taken January 18, 2006, and a copy of the CDCR Chronological History for plaintiff.  Defendant asserts that the following facts are undisputed:  on November 18, 1999, plaintiff arrived at California State Prison, Sacramento ("CSP-Sacramento"); prior to January 16, 2001, plaintiff did not have any documented enemies; between November 18, 1991, and January 15, 2001, plaintiff was not involved in any fights and did not experience any problems with inmates at CSP-Sacramento; in January 2001, plaintiff worked in the kitchen at CSP-Sacramento; inmates Walters and Meyer also worked in the kitchen; plaintiff had previously worked in the dining room with inmates Walters and Meyer without any problems; on January 16, 2001, defendant was supervising the kitchen and dining room; defendant discovered inmate manufactured alcohol, called pruno, in the kitchen when he observed plaintiff and inmate Henry looking under the sink after the drain plugged up; defendant saw a five gallon bucket under the dishwasher, removed it, opened it, and discovered that it contained pruno; defendant did not know who made the pruno; plaintiff believed the pruno

1  belonged to inmates Walters and Meyer, who were not present when the pruno was discovered; a
2  few hours later, inmate Holder entered the kitchen and said inmates Walters and Meyer were
3  after him; inmate Holder believed he was in danger because inmates Walters and Meyer thought
4  he had informed correctional staff that they were responsible for the pruno; plaintiff did not
5  believe that he himself was in danger; plaintiff instructed inmate Holder to stay in the kitchen
6  because plaintiff believed that inmates Walters and Meyer intended to harm inmate Holder but
7  would not be able to assault him in the kitchen; neither plaintiff nor inmate Holder advised
8  defendant or anyone else of these facts; plaintiff, inmate Holder, and another inmate were in the
9  kitchen when inmates Walters and Meyer entered the kitchen, walked past plaintiff, and
10 confronted inmate Holder; defendant was in his office, approximately 20 feet away; defendant
11 was able to look into most of the kitchen from his office; there were only three inmate workers in
12 the kitchen, and defendant believed he was capable of supervising them from the office; when
13 defendant heard inmates Walters and Meyer in the kitchen, he went into the kitchen and ordered
14 them to leave; inmates Walters and Meyer left the kitchen; defendant did not believe that plaintiff
15 or anyone else was in any danger; after inmates Walters and Meyer left, plaintiff returned to
16 making coffee; shortly thereafter, he noticed that inmate Holder had left the kitchen; plaintiff
17 discovered inmate Holder in the locker area smoking with inmates Walters and Meyer; plaintiff
18 was confused because the three inmates appeared friendly toward each other; plaintiff returned to
19 the kitchen and resumed making coffee; soon after plaintiff re-entered the kitchen, inmates
20 Walters and Meyer entered the kitchen and attacked plaintiff without warning; the attack took
21 plaintiff completely by surprise; plaintiff had no knowledge that the inmates were about to attack
22 him; defendant did not believe or have any reason to believe that inmates Walters and Meyer
23 posed any threat of harm to plaintiff; at approximately 2:00 p.m., defendant had gone into his
24 office to prepare a list of the workers assigned to cook dinner that evening; at approximately 2:15
25 p.m., defendant heard the sounds of pans falling and someone moaning; defendant rushed out of
26 his office and observed inmate Walters assaulting plaintiff; defendant immediately activated his

1  personal alarm and ordered inmate Walters to get on the floor; when inmate Walters failed to
2  comply, defendant dispensed a burst of pepper spray to his face; inmate Walters immediately
3  stopped assaulting plaintiff and got on the ground; at the same time, Officer Kruse entered the
4  dining room, drew his pepper spray, pointed it at inmate Meyer's face, and ordered him to get
5  down; inmate Meyer promptly complied with the order; plaintiff was promptly transported to the
6  hospital for medical treatment.

7  Citing the standards set forth in Wilson v. Seiter, Whitley v. Albers, and Farmer v.
8  Brennan, defendant argues that there is no evidence that he was deliberately indifferent to a
9  substantial risk of serious harm to plaintiff, as required to support plaintiff's Eighth Amendment
10 claim that defendant failed to protect plaintiff.  Defendant asserts that a prison official may not be
11 held liable if he proves that he was unaware of even an obvious risk or if he responded
12 reasonably to a known risk, even if the harm ultimately was not averted.  Defendant cites
13 Redman v. County of San Diego, 942 F.2d 1435, 1441 (9th Cir. 1991), in which the court held
14 that an officer cannot be held liable for an inmate's behavior in attacking another inmate absent a
15 showing of deliberate indifference by the officer.

16 Defendant argues that the incident took everyone by surprise.  He cites plaintiff's
17 testimony that he did not believe inmates Walters and Meyer intended to harm him, that he did
18 not advise defendant Brown about his conversation with inmate Holder, that he told inmate
19 Holder to stay in the kitchen because it was safe there, and that he had no advance warning of the
20 attack on him.  Defendant asserts that he had no reason to believe that inmates Walter and Meyer
21 posed any threat of harm to plaintiff and therefore performed his duties on January 16, 2001, in
22 accordance with his established custom and practice.  Under these circumstances, defendant
23 argues that he is entitled to summary judgment even if he was negligent is some way, because
24 negligence cannot support a § 1983 claim based on deliberate indifference.

25 Defendant argues that he is also entitled to qualified immunity on the basis of
26 uncontroverted evidence that he violated no constitutional right.  Defendant argues that a

determination that he did not intentionally violate plaintiff's rights will establish his entitlement to qualified immunity and eliminate the need to inquire further but contends that he is also entitled to qualified immunity because a reasonable person in his position could have believed his conduct was lawful.

II. Plaintiff's Opposition

Plaintiff begins by complaining that defendant provided only excerpts of his deposition transcript in support of the summary judgment motion. Plaintiff states that he is unable to afford a copy of the transcript and has been prevented from reviewing other parts of the transcript that may be beneficial to him. Plaintiff asserts that he should have the same opportunity to utilize excerpts from the transcript to support his opposition.

Plaintiff argues four points in opposition to defendant's motion. First, plaintiff disputes defendant's contentions that from his office he was able to look into most of the kitchen and was capable of supervising the inmate workers from the office. Plaintiff contends that such supervision was not possible since the windowless office was located approximately twenty feet down a hallway from the kitchen. Citing the allegations of his complaint and his deposition testimony, plaintiff argues that defendant did not have a view of most of the kitchen. Plaintiff also cites his deposition testimony that the attack lasted quite some time, perhaps three or four minutes, and defendant's admission that it was the sound of pans falling and moaning that caused him to rush out of his office, where he was able to observe inmate Walters assaulting plaintiff. Plaintiff asserts, without citing evidence, that defendant was required to maintain constant visual contact with the inmates assigned to the kitchen and that, had he done so, he would have seen inmates Walters and Meyer enter the kitchen, take the 21.7 pound cast iron can opener from inmate Holder, pick up a gallon-sized can of pudding, approach plaintiff, and attack him for three or four minutes. Plaintiff argues that defendant was "hiding" in the office to avoid his required duties, allowed the attack to happen, and was therefore deliberately indifferent to plaintiff's safety and well being.

Second, plaintiff admits he had no reason to feel he was about to be attacked but argues that defendant's training, observation, and earlier interaction with inmates Walters and Meyer should have put him on notice that a dangerous situation was developing. Plaintiff cites the confrontation inmates Walters and Meyer had with inmate Holder, which ended with defendant ordering inmates Walters and Meyer out of the kitchen. Plaintiff argues that it must have been obvious to defendant that there was a hostile situation for him to give such an order. Plaintiff also cites the fact that defendant believed inmates Walters and Meyer were drunk.

Third, plaintiff states that he was asked during his deposition whether defendant was surprised by the attack on plaintiff. He argues that the question was objectionable because it called for speculation on his part due to the fact that defendant was not in the kitchen when the attack began and plaintiff was badly injured and unconscious when the attack was stopped.

Fourth, plaintiff challenges defendant's argument concerning plaintiff's failure to inform defendant that he felt he was in danger. Plaintiff admits that he did not feel he was in danger because he had not been confronted by inmates Walters and Meyer and believed it was inmate Holder who was in danger. Plaintiff argues that he had no reason to discuss the situation with defendant because defendant had heard and intervened in the confrontation inmates Walters and Meyer had with inmate Holder and defendant was therefore already aware of a hostile situation. Plaintiff argues that defendant's knowledge of the situation with inmate Holder "was sufficient for Defendant to believe that any inmate under his supervision may be in danger of attack."

Plaintiff asserts that defendant, a veteran officer trained and experienced in potential problems in a Level IV Super Max prison, was deliberately indifferent to his surroundings, to prison regulations, and to plaintiff when he (1) failed to conduct routine searches of the kitchen area to prevent inmates from engaging in illegal activities such as manufacturing pruno and smoking in the locker area, (2) allowed two inmates who were drunk and confrontational to leave the area unhindered and unescorted, (3) failed to report his

suspicions concerning inmates Walters and Meyer to his supervisors so that they could determine whether the inmates were a threat to the security of the institution or to individuals, and (4) disappeared into his office instead of observing the inmates under his supervision, leaving them unprotected. Plaintiff concludes that defendant is not entitled to qualified immunity or summary judgment.

Although Local Rule 56-260(b) does not require or authorize the non-moving party to submit a statement of undisputed facts in opposition to a summary judgment motion, plaintiff submitted such a statement with his opposition. The 27 facts in plaintiff's statement are virtually identical to defendant's undisputed facts Nos. 1 through 15, 17-27, and 29.

Plaintiff has also submitted a document that purports to be a statement of disputed facts. A party opposing summary judgment is required to reproduce all itemized facts in the moving party's Statement of Undisputed Facts and admit the facts that are undisputed and deny those that are disputed, "including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial." Local Rule 56-260(b). Plaintiff has not reproduced defendant's itemized facts and admitted or denied each one. The 15 facts in plaintiff's statement of disputed facts are virtually identical to defendant's undisputed facts Nos. 16, 28, and 30 through 42. Although it may be plaintiff's intention to dispute these 15 facts, he has not included with each denial a citation to a document that supports the denial. Defendant's Nos. 16 and 28 are supported by plaintiff's deposition testimony, Nos. 30-41 are supported by defendant's declaration, and No. 42 is supported by plaintiff's deposition testimony and defendant's declaration. Plaintiff's mere identification of these facts as disputed, without citation to evidence that supports the existence of a dispute, fails to controvert any of defendant's undisputed facts.

III. <u>Defendant's Reply</u>

Defendant asserts that plaintiff has not presented any evidence that raises a triable issue of fact. Citing the requirements of Federal Rule of Civil Procedure 56 and Local Rule 56-

260(b), as well as Supreme Court authority, defendant asserts that plaintiff purports to dispute many facts included in defendant's statement of undisputed facts but fails to support the alleged disputes with evidence.  Defendant reiterates his entitlement to summary judgment in the absence of a single triable issue and his entitlement to qualified immunity in the face of uncontroverted evidence that he did not violate any constitutional right.  In a separate document, defendant contends that plaintiff has provided no evidentiary support for his statements of disputed and undisputed facts, making it difficult or impossible for defendant and the court to determine whether there is any basis for the purported disputes.  Defendant argues that plaintiff's statements of disputed and undisputed facts should be disregarded for lack of evidentiary support.

IV.  Further Briefing

By order filed July 24, 2006, the court advised plaintiff of his failure to comply with Local Rule 56-260(b).  The court provided plaintiff with extensive information about the non-moving party's burden of identifying disputed issues of material fact and producing evidence to demonstrate the existence of a dispute.  The court referred plaintiff to specific pages of the court's October 1, 2003 order for information about the requirements for opposing a defendant's motion for summary judgment.  The court addressed plaintiff's complaint about inability to obtain a complete copy of his deposition transcript and advised him that he may provide his own testimony in a declaration under penalty of perjury.

In the July 24, 2006 order, the court advised plaintiff that his defective statement of disputed facts will not be considered in ruling on defendant's motion.  Plaintiff was granted thirty days to supplement his opposition by filing a proper statement of admissions and denials, with citations to evidence in support of each denial.

Plaintiff did not respond to the court's July 24, 2006 order in any way.  On September 12, 2006, the court gave plaintiff yet another opportunity to submit evidence demonstrating the existence of disputes of fact.  The order provides that "all facts contained in defendant's March 24, 2006 Statement of Undisputed Facts shall be deemed admitted unless

11

plaintiff files and serves a declaration, within fifteen days after this order is served, showing good cause for his failure to comply with the court's July 24, 2006 order." The order further provides that the declaration must be accompanied by the admissions and denials required by the July 24, 2006 order. Plaintiff did not respond to the September 12, 2006 order in any way.

## ANALYSIS

The Civil Rights Act under which plaintiff is proceeding provides that

> [e]very person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires an actual connection or link between the actions of each defendant and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

The Eighth Amendment prohibits cruel and unusual punishments. U.S. Const. amend. VIII. It is well established that the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). However, neither accident nor negligence constitutes cruel and unusual punishment, for "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

In order to prevail on any claim of cruel and unusual punishment, a prisoner must prove facts that satisfy a two-part test. First, the prisoner must prove that objectively he suffered

12

a sufficiently serious deprivation. Wilson v. Seiter, 501 U.S. 294, 298 (1991). Second, the prisoner must prove that subjectively each defendant acted with deliberate indifference in allowing or causing the prisoner's deprivation to occur. Id. at 299. It is insufficient to show mere negligence or error on the part of the defendant. Id.

An inmate's health and safety are conditions of confinement subject to the strictures of the Eighth Amendment. Wilson, 501 U.S. at 303. An injury to a prisoner's health or safety "translates into constitutional liability" for the prison officials responsible for a prisoner's safety when the deprivation suffered is sufficiently serious and each official had a sufficiently culpable state of mind in causing or allowing the deprivation to occur. Farmer, 511 U.S. at 834. Where a prisoner alleges failure to prevent harm, he or she satisfies the "sufficiently serious" requirement by proving the existence of conditions posing a substantial risk of serious harm. Id. at 834; see also Helling v. McKinney, 509 U.S. 25, 33-34 (1993). However, a prison official has a sufficiently culpable mind only where "the official knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. Whether a prison official had the requisite knowledge of a substantial risk is a question of fact. Id. at 842. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

Upon consideration of defendant's arguments and the portions of the record cited in support of the summary judgment motion, the undersigned finds that defendant has pointed to evidence demonstrating that there is no genuine issue as to any material fact concerning plaintiff's Eighth Amendment claim and that defendant is entitled to judgment as a matter of law.

The defendant having borne his initial responsibility, the burden shifts to plaintiff to establish the existence of genuine issues of material fact requiring a trial. As the party who will bear the burden of proof at trial, plaintiff may not rely on the allegations of his amended

1  complaint or on mere argument but must provide evidence that demonstrates the existence of
2  genuine issues as to material facts.  Plaintiff submitted no evidence in support of his opposition
3  and relied on his amended complaint, his deposition testimony, and defendant's declaration.
4  Plaintiff's amended complaint is not signed under penalty of perjury and does not include any
5  exhibits or declarations.  The pleading has no evidentiary value.

6        After reviewing the entire transcript of plaintiff's deposition, the undersigned
7  finds that plaintiff's testimony does not demonstrate that defendant knew of a substantial risk of
8  serious harm to plaintiff's safety at any time on January 16, 2001.  Nor does plaintiff's testimony
9  show that defendant knew of facts from which he could have drawn an inference of a substantial
10 risk to of serious harm to plaintiff.  Indeed, plaintiff's testimony supports defendant's argument
11 that he had no reason to believe that there was a threat of harm to any inmate.

12       Inmates Walters and Meyer were not in the kitchen when defendant discovered
13 the pruno hidden under the dishwasher.  (McHenry Dep. at 21:21-24.)  Defendant did not know
14 who the pruno belonged to and had threatened to issue rule violation reports and fire all of the
15 inmate workers.  (Id. at 10-19.)  Inmates Walters and Meyer were in the kitchen three times after
16 the pruno was discovered.  First, they came looking for inmate Holder about fifteen or twenty
17 minutes after the pruno was discovered.  (Id. at 18:14-17, 54:24-55:3.)

18       A.  What happened is that when they first came into the kitchen they tried to get Eric Holder.

19       Q.  They didn't come after you?

20       A.  No.

21       Q.  All right.  Let's get after that?

22       A.  They came into the kitchen and they were after Eric
23 Holder.  And Eric Holder was in the cooking area.  I was on the steam line side where the half a wall separated us.  They came in.
24 They passed me by.  Had nothing to do with me.  They went right into the kitchen and they tried to hit on Eric Holder.  There was a
25 scraper –

26       Q.  Um-hum.

14

      A. – that was laying there.  Eric Holder grabbed the scraper.  Pulled it out and was holding it in his hand as a weapon to defend himself against these two people.  So he ran around the end of the – end of the kitchen.  Came over there and stood by me.

      These two individuals came around.  And when they came around they seen me and Holder.  And so I asked them what are you guys doing.  What's going on.  And they just put their hands up and they said oh, nothing holmes [sic].  Chill out.  Everything's cool.

      Mr. Brown heard this conversation.  He came out of his office.  And Mugsy and Flaco [Walters and Meyer] were speaking and Mr. Brown could tell that there was something wrong with them.  And then he asked, you know, what's wrong with you.  Are you – I believe he said are you drunk.

      . . . .

      So when they came in there and Mr. Brown asked them are you drunk, well, by their reactions they were drunk.  So then Mr. Brown asked them says is that your pruno.  They confessed and said yes.

      Q. Okay.

      A. That was our pruno.  So Mr. Brown fired them right now.  So they turned around and left.  So I continued on making the coffee.

(Id. at 30:12-31:14, 31:23-32:5.)

Although plaintiff argues that defendant was aware of hostility between inmate Holder and inmates Walters and Meyer, plaintiff's testimony does not show that defendant knew about any hostility.  It does not appear that defendant heard any arguing or saw any fighting.  The two inmates confessed that the pruno was theirs, defendant fired them, and they left.  Defendant had no reason to infer that any inmate was in danger because he himself had discovered the pruno, he did not know who the pruno belonged to until inmates Walters and Meyer confessed, and he fired them because they were drunk and confessed that the pruno was theirs.  Neither plaintiff nor inmate Holder told defendant that the inmates had came looking for inmate Holder.  (Id. at 24:8-24.)  Thus, the facts known to defendant did not give rise to an inference of danger to plaintiff or any other inmate and did not put defendant on notice of a "hostile" situation.

/////

/////

1   Inmates Walters and Meyer passed through the kitchen again ten to twenty
2   minutes after defendant Brown fired them, and the attack on plaintiff followed shortly thereafter.
3   (Id. at 18:14-17, 31:15-22; 32:5-7, 55:4-14.)

> . . . . I would estimate anywhere from 10 to 20 minutes later they came back through. And I was standing on a three-step ladder, standing on the second step, pouring hot water over the grounds and the filter of the coffee machine.
> And I looked around and I didn't see Eric Holder. There was a big refrigerator, a walk-in refrigerator we had. Usually – we was allowed to smoke, long as it wasn't seen. So quite a few times when we went to have a smoke we'd go into the locker to smoke in there, which was allowed by the staff. So I went around and opened up the door and here they were. And they had Holder in there.
>
> Q. Were they assaulting him?
>
> A. No.
>
> Q. What is going on in there?
>
> A. That's what I said. What's going on. And they're smoking and I couldn't figure – it didn't register. Here they are and they're buddies or whatever and they're smoking. And I asked if everything was okay, if everything is cool. And they answer, and answered like everything is cool holmes [sic].
>
> Q. How long after this conversation did they attack you?
>
> A. Just a few seconds. So I close the door. What Eric Holder was doing before this happened he was opening cans of pudding, gallon cans of pudding, and putting them on the tray –
>
> Q. Right.
>
> A. – to serve. And Dave Henry was still scraping pans.
>
> Q. One of the inmates used a can opener and the other one picked up the can of pudding to assault you?
>
> A. Yes. So I closed the door, went around and climbed back up my ladder and was continuing to pour hot water. Out of my peripheral vision on the left side of my eye I see this blue and yellow or white blur. And it hit me in the side of the head.
>
> Q. I'm guessing you probably don't recall much after they started attacking you or do you?

16

1     A. I do.

2     Q. Okay. How long did the attack last?

3     A. Quite some time.

4     Q. Approximate amount of time?

5     A. Minutes.

6     Q. Three, four minute?

7     A. Yeah.

8     Q. Brown got up pretty quick. Pepper sprayed one of these inmates. Got them stopped?

9

10     A. Yes.

11     Q. Another correctional officer came in and did the same because there were two different inmates, two different people stopped them?

12

13     A. Yeah. In fact, the – kitchen filled up with quite a few officers real quick. So I'm being honest. I don't know how many were in there.

14

15 (Id. at 32:5-34:10.)

16   When inmates Walters and Meyer passed through the kitchen ten to twenty

17 minutes after they were fired from their kitchen jobs, plaintiff did not report their presence to

18 defendant, and there is no evidence that defendant would have seen their brief passage through

19 the area if he had been sitting in the dining hall instead of in his office. After plaintiff found

20 inmate Holder smoking with inmates Walters and Meyer in the walk-in refrigerator, he did not

21 report the presence of inmates Walters and Meyer to defendant. Defendant did not know that

22 inmates Walters and Meyer had returned until he heard noises in the kitchen and ran to stop the

23 assault on plaintiff. There is no evidence that defendant would have been able to respond any

24 sooner if he had been working on his paper work in the dining hall rather than in his office.

25   Plaintiff has suggested that defendant Brown should have been sensitive to the

26 danger created by a hostile situation arising from defendant's discovery of pruno, the fact that

17

inmates Walters and Meyer came after inmate Holder, and defendant's firing of inmates Walters and Meyer. For the reasons set forth above, the record does not support this suggestion. According to plaintiff's testimony, defendant was not aware that inmates Walters and Meyer had come after inmate Holder, and there was no reason for the defendant to infer a risk of harm to plaintiff from defendant's own discovery of pruno and his firing of the inmates who had made the pruno.

Plaintiff has failed to demonstrate the existence of a genuine issue of material fact concerning the subjective element of his Eighth Amendment claim. In the absence of any evidence that defendant knew of and disregarded an excessive risk to plaintiff's safety on January 16, 2001, the undersigned finds that no rational trier of fact could find that defendant had a sufficiently culpable state of mind. Plaintiff's complete failure of proof concerning the subjective element of his claim renders all other facts, as well as any disputes concerning those facts, immaterial. Summary judgment should be entered for defendant.

In light of the determination that defendant is entitled to judgment in his favor on the merits of plaintiff's claims, it is unnecessary to consider defendant's argument in the alternative that he is entitled to qualified immunity.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant Brown's March 24, 2006 motion for summary judgment be granted; and

2. This action be dismissed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with the findings and recommendations, any party may file written objections with the court and serve a copy on all parties. A document containing objections to the findings and recommendations should be titled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to objections shall be served and filed within ten days after

service of the objections. The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. See <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 22, 2007.

/s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:13
mche1573.57